IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| MARIA VASQUEZ,<br>　　　Plaintiff, | )<br>)<br>) |
| v. | )　　NO. EP-11-CV-494-RFC<br>)　　(by consent) |
| CAROLYN W. COLVIN,[1]<br>Acting Commissioner of the Social<br>Security Administration,<br>　　　Defendant. | )<br>)<br>)<br>)<br>) |

**MEMORANDUM OPINION AND ORDER**

This is a civil action seeking judicial review of an administrative decision. Plaintiff appeals from the decision of the Commissioner of the Social Security Administration (Commissioner), denying her claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 423(d), 1382c(a)(3). Jurisdiction is predicated upon 42 U.S.C. § 405(g). Both parties having consented to trial on the merits before a United States Magistrate Judge, the case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**PROCEDURAL HISTORY**

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

On May 11, 2009, Plaintiff filed her application for DIB due to impairments that she alleges became disabling on April 24, 2009.[2] (R:113-115, 27)[3] The application was denied initially and on reconsideration. (R:57, 63) Pursuant to Plaintiff's request, an Administrative Law Judge (ALJ) held a hearing to review Plaintiff's application *de novo* on August 24, 2010, at which Plaintiff was represented by an attorney, and a vocational expert testified. (R:48-51) The ALJ issued her decision on December 15, 2010, denying benefits on the basis that, considering her age, education, work experience, and residual functional capacity ("RFC"), Plaintiff had acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy that Plaintiff could perform. (R:5-22) Plaintiff's request for review was denied by the Appeals Council on September 23, 2011. (R:1-4)

On November 22, 2011, Plaintiff submitted her complaint along with a motion to proceed *in forma pauperis*. (Doc. 1) The motion was granted and her complaint was filed. (Doc. 4) The Commissioner filed an answer and a certified copy of the transcript of the administrative proceedings on February 7, 2012. (Docs. 14, 15) On March 16, 2012, Plaintiff's brief was filed. (Doc. 19) On April 17, 2012, the Commissioner filed his brief in support of the decision to deny benefits. (Doc. 21) On April 26, 2012, Plaintiff filed a Reply brief. (Doc. 22) Both parties having filed notices of consent to proceed before a Magistrate Judge, this cause was reassigned to this Court on May 15, 2012, by order of United States District Court Judge Philip R. Martinez. (Docs. 3, 13, 16, 23)

---

[2] Plaintiff originally alleged an onset date of September 1, 2000. (R:113) At the hearing on August 24, 2010, the onset date was amended to April 24, 2009. (R:27)

[3] Reference to documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(R:[page number(s)])".

**ISSUES**

Plaintiff presents the following issues for review:

1. Whether the ALJ failed to properly evaluate the limiting effects of Plaintiff's obesity; and

2. Whether there is substantial evidence in the record to support the ALJ's RFC finding that Plaintiff is limited to performing manipulative tasks to no more than frequently, and is not limited to no more than occasionally performing manipulative tasks as Plaintiff's treating physician opined.

(Doc. 19:3, 3-5, 5-10)

**DISCUSSION**

*I.   Standard of Review*

This Court's review is limited to a determination of whether the Commissioner's final decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120 (1995). Substantial evidence is more than a scintilla, but can be less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). A finding of no substantial evidence will be made only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In reviewing the substantiality of the evidence, a court must consider the record as a whole and "must take into account whatever in the record fairly detracts from its weight." *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. *Martinez*, 64 F.3d at 173. In applying the substantial evidence standard, a court must carefully examine the entire record, but may not reweigh the evidence or try the issues *de novo*. *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989). It may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision," because substantial evidence is less than a preponderance. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Conflicts in the evidence are for the Commissioner, and not the courts, to resolve. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).

## II.     *Evaluation Process*

Disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which. . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ evaluates disability claims according to a sequential five-step process: 1) whether the claimant is currently engaged in substantial gainful activity; 2) whether the claimant has a medically determinable impairment that is severe; 3) whether the claimant's impairment(s) meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart B, Appendix 1; 4) whether the impairment prevents the claimant from performing past relevant work; and 5) whether the impairment prevents the claimant from doing any other work. 20 C.F.R. § 404.1520. A person's RFC is what he can still do despite his limitations or impairments. 20 C.F.R. § 404.1545(a); SSR 96-8p.

An individual applying for benefits bears the initial burden of proving that he is disabled for purposes of the Act. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). The claimant bears the burden of proof on the first four steps, and once met, the burden shifts to the Commissioner to show

that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).

### III.     The ALJ's Hearing Decision

First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2012, and had not engaged in substantial gainful activity since April 24, 2009, the alleged onset date. (R:10)  Second, the ALJ found that Plaintiff had severe impairments consisting of degenerative disease of the bilateral shoulders and thoracic and lumbar spines, osteoarthritis of the left knee, obesity, a history of remote bilateral carpal tunnel surgeries, and fibromyalgia. (R:10-11)  The ALJ found that Plaintiff's medically determinable mental impairment of depression was non-severe. (*Id*.)  Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R:11-12)

The ALJ found Plaintiff has the RFC to perform a limited range of sedentary work consistent with her first hypothetical question to the vocational expert.  (R:12) Plaintiff could, *inter alia*, lift/carry ten pounds occasionally and less than ten pounds frequently; sit for no more than six hours in an eight-hour workday with normal breaks; stand/walk for no more than two hours in an eight-hour workday and thirty minutes at one time; push and pull with upper and lower extremities consistent with strength limitations stated above; and *reach, handle, finger, and feel no more than frequently*.  (R:12-16 (emphasis added))  Further, the ALJ found *no evidence that Plaintiff's obesity, alone or in combination with her co-existing impairments, has further limited Plaintiff's RFC*. (R:15 (emphasis added))

5

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work as an office manager, according to the testimony of the vocational expert. (R:16)  Moving to step five, the ALJ considered Plaintiff's age, education, work experience, and RFC. (R:17)  Although the vocational expert answered that all jobs would be eliminated with the more restrictive limitation of no more than occasional manipulative tasks, the expert testified that an individual with the less restrictive limitation of no more than frequent manipulative tasks would be able to perform as a clerical sorter, clerical checker, or payroll clerk, all positions existing in significant numbers in the national economy. (R:17-18)

The ALJ found that the medical source opinion containing the limitation of no more than occasional manipulative tasks was not well supported by objective medical findings and was not consistent with the record as a whole, including objective clinical findings. (R:18)  The ALJ concluded that Plaintiff had not been under a disability from her alleged onset date through the date of the ALJ's decision. (*Id.*)

IV.    **Analysis**

    **A.**    **Obesity**

Plaintiff claims that the ALJ committed reversible error by failing to consider the limiting effects of Plaintiff's obesity alone and in combination with Plaintiff's other impairments in determining Plaintiff's RFC. (Doc. 19:3-5) The ALJ found that Plaintiff has a severe impairment of obesity; Plaintiff is five feet two inches tall and weighs 197 pounds with a body mass index of 36. (R:10, 349)  Plaintiff argues that such a person has a very high risk of developing obesity related impairments. (Doc. 19:4) Limitations that can result from obesity include limiting the ability to sit, stand, walk, lift, carry, push, pull, climb, balance, stoop, crouch, and manipulate objects, fatigue

diminishing physical and mental ability to sustain work activity, and increased pain from arthritis. Social Security Ruling (SSR) 02-1p. The effects of obesity should be considered in evaluating RFC, not just the listings. (*Id.*)

Plaintiff argues that the ALJ cited SSR 02-1p only at step two regarding severity and contends the ALJ failed to consider any limitations that can result from obesity when assessing Plaintiff's RFC. (Doc. 19:4)  The ALJ, however, did address Plaintiff's obesity in assessing her RFC. In her discussion of Plaintiff's RFC, the ALJ stated "[p]ursuant to [SSR 02-1p], there is no evidence that the claimant's obesity, alone or in combination with her co-existing impairments, has precluded the claimant from performing a limited range of sedentary work as set forth above." (R:15)

Plaintiff does not identify any evidence in the record to undermine the ALJ's finding regarding Plaintiff's obesity. (Docs. 19, 22) Nor did Plaintiff address her obesity and how it affects her functional limitations at the hearing before the ALJ; Plaintiff did not mention it in her testimony and her attorney did not ask her about it. (R:25-52) Because Plaintiff was represented by counsel, the ALJ could assume Plaintiff's strongest case for benefits had been presented. *See Glenn v. Secretary of HHS*, 814 F.2d 387, 391 (7th Cir. 1987). The Commissioner notes that Plaintiff weighed 182 pounds in January 2006 and 196.5 pounds with a body mass index of 36 in April 2008 and continued to perform substantial gainful activity. (Doc. 21:6 (citing R:215, 292, 298))

Plaintiff has failed to show that the ALJ's consideration of her obesity was deficient or that she was prejudiced by the ALJ not having discussed her obesity in greater detail. Plaintiff is not entitled to relief on this claim.

### B.     Manipulative Limitations

Plaintiff argues that the ALJ committed reversible error by failing to apply the correct legal standard in determining the weight to give her treating source's opinion.  (Doc. 22: 1-2)  She contends that the ALJ failed to comply with the regulations' requirements that an ALJ provide an explanation for the weight given to a treating source's opinion containing specific reasons supported by evidence from the record—either analyzing each of the factors outlined in 20 C.F.R. § 1527 or properly citing to competing first-hand medical evidence and explaining how it contradicts the treating physician's opinion— and sufficiently specific to allow for review. (*Id*.)  She claims that the record does not contain substantial evidence to support the ALJ's explanation for rejecting the opinion of her treating physician, Dr. Mohammed Alnajjar—that she is limited to performing manipulative tasks no more than occasionally—which the vocational expert testified would eliminate all jobs.  (Doc. 19:9, 22:3)  Plaintiff essentially challenges the ALJ's finding that Dr. Alnajjar's opinion is not consistent with the medical records as a whole. (Doc. 19:9)  Plaintiff asserts that the ALJ failed to consider all the evidence in support of that opinion, instead picking and choosing the evidence that supported the ALJ's finding. (*Id*.)

The ALJ stated multiple times that she carefully considered the evidence and the entire record.  (R:10, 12, 13)  The ALJ specifically addressed her rejection of Dr. Alnajjar's opinion regarding the more restrictive limitation to only occasional manipulative tasks.  (R:18) Acknowledging that the vocational expert had testified that such a limitation would eliminate all jobs, the ALJ explained that the response to that hypothetical question would not be the basis for her decision:

> . . . since the record as a whole does not support a limitation to occasional reaching, handling, fingering, and feeling. Dr. Amakiri's consultative examination report shows that the claimant had intrinsic hand strength of 5/5 bilaterally. In addition, she was able to reach as well as finger and feel an object when asked to do so. She was also able to pick up a pen and button clothes. [ ] I give little weight to the treating physician's, Dr. [Alnajjar]'s, assessment that the claimant was limited to occasional reaching, handling, and fingering, since his medical source statement is not well supported by objective medical findings and is not consistent with the record as a whole, including the objective clinical findings.

(R:18, *internal record citations omitted*)

Drs. Kelvin Samaratunga, M.D., Frederick Cremona, M.D., and Onyema E. Amakiri, D.O. found that Plaintiff had no manipulative limitations. (R:14) The ALJ found that the record as a whole did not support finding that Plaintiff had no limitation in performing manipulative tasks, but also did not support finding that Plaintiff was limited to performing manipulative tasks no more than occasionally. (R:14-15, 18) The ALJ therefore gave little weight to all of the medical source opinions regarding Plaintiff's abilities to perform manipulative tasks. (*Id.*) In declining to adopt Dr. Alnajjar's opinion regarding occasional manipulative tasks, the ALJ did not rely on Dr. Amakiri's contrary opinion, but on the objective clinical observations Dr. Amakiri recorded during the consultative examination. (R:18)

While Plaintiff charges the ALJ with picking and choosing only evidence supporting her conclusion, Plaintiff's summary of the medical records itself omits several relevant findings, some of which the ALJ specifically mentioned. (Docs. 19, 22) Plaintiff cites to numerous medical records indicating that Plaintiff has pain in her shoulders, elbows, and hands, arguing that such records support Dr. Alnajjar's limitation of no more than occasional manipulative activities. (Doc. 19:9) This may be substantial evidence to support the ALJ's determination that the other medical source opinions that Plaintiff had no limitations with manipulative tasks were inconsistent with the evidence

9

as a whole and that Plaintiff had at least some degree of limitation in her ability to perform manipulative tasks with her hands. However, the question before this Court is whether there is substantial evidence in the record to support the ALJ's determination that Dr. Alnajjar's opinion was likewise inconsistent.

There is substantial evidence in the record to support the ALJ's determination that Dr. Alnajjar's opinion—that Plaintiff was limited to performing manipulative tasks on no more than an occasional basis—was unsupported by any objective medical findings and was inconsistent with the record as a whole. "While the diagnoses of chronic fatigue syndrome and fibromyalgia may not lend themselves to objective clinical findings, the physical limitations imposed by the symptoms of such illnesses do lend themselves to objective analysis." *Boardman v. Prudential Ins. Co.*, 337 F.3d 9, 16-17 n. 5 (1st Cir. 2003). Dr. Alnajjar's opinion is not supported by any objective analysis or observation of the limiting effects of Plaintiff's reported pain, either contemporaneously with his opinion or in any of his treatment notes over the years; nor had Dr. Alnajjar restricted Plaintiff's activities. *See Villalpando v. Astrue*, No. 08-50166, 320 Fed. Appx. 208, 2009 WL 728408 at *211 (5th Cir. 2009) (ALJ denial supported by substantial evidence where treating physician had noted few objective findings such as swelling, decreased joint mobility, or poor muscle tone. 20 C.F.R. § 404.1527(e).); *Benavides v. Astrue*, No. 4:11-CV-859-A, 2013 WL 593892 at *8 (N.D. Tex. Jan. 18, 2013), magistrate recommendation adopted by 2013 WL 593833 (N.D. Tex. Feb. 15, 2013) (ALJ's RFC assessment supported by credible evidentiary choices and medical findings in the record where records reflect hospital visits for fibromyalgia treatment and complaints of pain, but do not document any limitations observed or restrictions imposed on her activities by the medical personnel.). Dr. Alnajjar's treatment records from January 2009 reflect, *inter alia*, Plaintiff's report

of bilateral hand and shoulder pain and a diagnosis of bilateral hand pain. (R:266) Such report and diagnosis was recorded again in November 2009 (R:409) and January 2010. (R:408) On July 14, 2010, Dr. Alnajjar signed his medical source statement; there is no indication that he had treated, examined, or even observed Plaintiff since January 2010. (R:446-448)

None of these records reflect observed functional limitations or any objective clinical tests measuring any functional affect of Plaintiff's pain on her ability to perform manipulative tasks. To the contrary, in records from July 2008, September 2008, January 2009, and April 2009 Dr. Alnajjar checked that Plaintiff's extremities and neurology was within normal limits without noting any abnormalities. (R:264, 266, 267, 269) One record from April 2007 does mention that Plaintiff had pain, weakness, and numbness in the muscles, joints, and bones of her arms, hands, and neck and swelling in her ankles. (R:309) However, this merely reflects Plaintiff's reports of symptoms she either currently had or had experienced in the past year. (*Id.*)

In addition to a lack of documented objective effects, observed limitations, or restrictions imposed due to the fibromyalgia pain, objective clinical findings of normal muscle tone, strength, and range of motion, can support a denial of benefits and is thus relevant to and can provide substantial support for the ALJ's RFC determination. *See Ward v. Barnhart*, 192 Fed. Appx. 305 at 308-309, 2006 WL 2167675 (5th Cir. 2006) (substantial evidence supported denial where ALJ discussed competing first-hand medical evidence that claimant had normal muscle tone and bulk with five out of five strength in all muscle groups in all extremities, and an exam showed no swelling in joints.); *LeMarr v. Astrue*, No. 2:09-CV-0060, 2011 WL 4435294 at *13 (N.D. Tex. Sept. 6, 2011) (allegations of extreme limitations due to pain from fibromyalgia were contradicted by findings on physical examination that she had normal unrestricted movement and no atrophy); *Bush*

*v. Unum Life Ins. Co. of America*, No. H-09-CV-1589, 2010 WL 3064076 at *8 (S.D. Tex. Aug. 3, 2010) ("Fibromyalgia is not a disease of muscle pathology and does not cause weakness. . . . However, patients with fibromyalgia will often limit their activity level to the degree where they become deconditioned.")

      The ALJ specifically referenced Dr. Amakiri's report from July 2009 that Plaintiff had intrinsic hand strength of 5/5, and normal muscle tone and volume, range of motion, and deep tendon reflexes, that Plaintiff was able to reach an object and finger and feel an object when asked to do so, and that Plaintiff was able to pick up a pen and button clothes. (R:14, 18) Additionally, on January 2006, Dr. Marwah recorded Plaintiff's report of pain in her hands and noted tenderness at several cites, but noted that Plaintiff did not report numbness in her hands or swelling of her joints and that she had a fair hand grip. (R:216) In September 2007, Plaintiff reported bilateral joint pain in her shoulders and elbows that had been present for about one day; Dr. Hinojos noted that Plaintiff was tender to palpation in both shoulder and elbow joints. (R:213) Dr. Hinojos also noted that Plaintiff had normal strength in all extremities, full range of motion, and no rigidity. (*Id.*) He also mentioned Dr. Marwah's notes that Plaintiff wanted to do self therapy for strengthening exercises on her shoulders and elbows and that he instructed Plaintiff how to do such exercises. (*Id.*) In April 2008, Dr. Hinojos again noted Plaintiff's report that her shoulders were hurting, again noting bilateral shoulder and elbow joints were tender to palpation, but also noting that Plaintiff had normal strength in all extremities and full range of motion. (R:214) Dr. Hinojos did not instruct Plaintiff to restrict her activities, but rather instructed Plaintiff to continue with her self therapy strengthening exercises for her shoulders and elbows. (*Id.*) Additionally, the intake officer noticed Plaintiff having difficulty with sitting, but not with using her hands or writing. (R:140)

The ALJ's RFC finding is also supported by Plaintiff's own allegations and testimony. Plaintiff testified that she had pain in her wrists "just once in a while." (R:33) She alleged and testified that swelling in her hands causes her to lose her grip such that she cannot lift more than five or ten pounds without dropping it. (R:36, 39, 171) She testified that she takes notes of things she needs to do and checks them off as she does them. (R:41) She also testified that the medication she takes helps to alleviate the pain, but that at times she wishes she could take more than prescribed. (R:36) Although Plaintiff alleged that her fibromyalgia and various pains affected her ability to perform many daily activities, such allegations were very general and did not specify in what way her shoulder, arm, or hand pain prevented her from accomplishing any particular tasks. (*See* e.g. R: 171, 182, 186, 202) Thus, her only specific alleged limitation resulting from such pain was an inability to lift and carry anything more than ten pounds, which was a limitation accepted and accommodated in the ALJ's RFC determination. (R:12)

Plaintiff has shown neither that the ALJ failed to apply the proper legal standards in determining Plaintiff's RFC or that the ALJ's RFC determination is unsupported by substantial evidence in the record. The Court finds that the ALJ applied the correct standards and that there is substantial evidence in the record to support the ALJ's RFC determination. Plaintiff, therefore, is not entitled to relief on this claim.

## **CONCLUSION**

The Court concludes that the ALJ's findings are not the result of legal error and are supported by substantial evidence. The Commissioner's decision is, therefore, **AFFIRMED**.

**SIGNED and ENTERED on May 17, 2013.**

_____
**ROBERT F. CASTANEDA**
**UNITED STATES MAGISTRATE JUDGE**